1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

SHANELL K. DUNCAN,

CASE NO. 3:23-CV-5285-MJP-DWC

11

Plaintiff,

REPORT AND RECOMMENDATION

v.

12

ALVIN R. ALLEN, et al.,

Noting Date: December 3, 2024

13

Defendant.

14

15        Plaintiff Shanell Duncan, proceeding *pro se* and *in forma pauperis*, filed this civil rights

16   case pursuant to 42 U.S.C. § 1983. Presently pending before the Court is Defendants' Motion for

17   Summary Judgment. Dkt. 73. After reviewing the relevant record, the Court finds Plaintiff has

18   failed to provide admissible evidence that shows a genuine issue of material fact exists in this

19   case. Accordingly, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 73)

20   be granted as follows: Plaintiff's constitutional claims of excessive force and deliberate

21   indifference to a serious medical need be dismissed with prejudice and Plaintiff's state law

22   claims be dismissed without prejudice. The Court recommends this case be closed.

23
24

I.    **Background**

Plaintiff initiated this action on April 5, 2024. Dkt. 1. In his First Amended Complaint ("FAC"), Plaintiff, a pretrial detainee at the Pierce County Jail ("the Jail") at the time of the alleged incident, asserts Defendants violated his Fourteenth Amendment rights when Defendant Alvin Allen used excessive force against Plaintiff and Defendants Allen, Jason Finley, Nouhoum Sidibe, Alexander Tomas Gasper, Mark Ramos, Amber Tucker, and Candace Bullinger acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff also alleges state law claims of assault and battery against Defendant Allen and negligence against Defendant Bullinger.[1]

On August 29, 2024, Defendants filed a Motion for Summary Judgment. Dkts. 73, 74-75 (supporting evidence). Plaintiff filed a response requesting the Motion be stricken because Defendants did not file *Rand* notice. Dkt. 76. On September 12, 2024, Defendants filed *Rand* notice. Dkt. 79. Plaintiff filed his response to the Motion, and, on October 10, 2024, Defendants filed their reply. Dkts. 80, 81.

II.    **Standard of Review**

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

---

[1] The remaining Defendants named in the FAC have been dismissed. *See* Dkts. 44, 72.

1    the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

2    (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

3    metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

4    material fact exists if there is sufficient evidence supporting the claimed factual dispute,

5    requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

6    *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

7    626, 630 (9th Cir. 1987).

8        **III.    Evidence**

9        Defendants have submitted responses to discovery requests, an observation report, force

10   incident response form, and an incident report. Dkts. 74-75. Plaintiff submitted his own

11   declaration. Dkt. 80-1.

12       An Observation Report completed by corrections officers at the Jail states that, on

13   September 21, 2021, Plaintiff was angrily voicing his displeasure about being transferred to a

14   different unit. Dkt. 74-2. Defendant Ramos, a corrections deputy, observed Plaintiff was

15   preparing a shank. *Id*. Plaintiff was escorted to the showers and his cell was searched, but a

16   shank was not found. *Id*. During the search, Plaintiff was locked in the shower area yelling that

17   he was going to stop eating, drinking, and taking his medication. *Id.* at 3. He stated he was going

18   to end his life. *Id*.

19       The Jail employees informed Plaintiff that he would be stripped searched. Dkt. 74-2.

20   Plaintiff responded that the deputies would have to fight Plaintiff to get his clothes off. *Id*. The

21   record reflects Plaintiff threatened that he would use physical violence when the wrist restraints

22   were removed. *Id*. Defendant Allen, a corrections lieutenant, observed that Plaintiff had prepared

23   himself for a use of force scenario because he had his shirt around his neck and towels around his

24

arms to limit the effectiveness of a conducted electronic weapon (taser) or O.C. spray. *Id*. at 2-3. Defendant Allen, Defendant Finley, a corrections sergeant, S. Delgado, a non-party corrections deputy, and other corrections deputies arrived with a restraint chair. *Id*. at 2. "Multiple attempts were made to have [Plaintiff] comply," but he was verbally hostile toward the staff. *Id*.

Defendant Sidibe, a corrections deputy, escorted Plaintiff from the shower to the restraint chair. Dkt. 74-2 at 3. Plaintiff continued to yell; the lap belt was placed on first and ankle straps were being placed to secure Plaintiff's feet. *Id*. As deputies were attempting to secure the ankle straps, Plaintiff began to thrash around. *Id*. Deputies continued to provide Plaintiff with verbal directives to calm down. *Id*. Defendant Allen observed Plaintiff's left leg moving, determined the leg had too much movement to be secured, and thought Plaintiff's leg was moving toward Delgado's head. *Id*. Other deputies saw Plaintiff's foot come off the restraint chair. *See* Dkts. 74-5, 74-6, 74-10, 74-11. Defendant Allen then used an open palm strike to the left side of Plaintiff's face to distract him from contacting Delgado. Dkt. 74-2 at 3.

Delgado reported that Plaintiff was moving his body and legs while he was attempting to place Plaintiff's left leg into the retention strap. Dkt. 74-2 at 4. Delgado stated that Plaintiff jerked his leg up and towards Delgado's head as he was kneeling, but Delgado had a hold of Plaintiff's leg and was able to place it in the strap. *Id*.

Defendant Allen again provided verbal directives and warned Plaintiff force would be used against him. Dkt. 74-2. Plaintiff then threatened Defendant Allen with physical violence once his cuffs were removed. *Id*. The remaining straps were secured and Plaintiff was going to be transported to a room for observation. *Id*. Defendant Allen observed Plaintiff "trying to work up some spit in his mouth." *Id*. Defendant Allen informed Plaintiff that if Plaintiff attempted to

1  spit on Defendant Allen or other staff, force would be used. *Id*. "A spit sock was placed over the

2  head of [Plaintiff] to prevent him from spitting." *Id*.

3      Plaintiff was assessed by Nurse Martin and cleared of injuries. *Id*. Plaintiff was removed

4  from the restraint chair after about two and one-half hours and returned to his cell. *See* Dkt. 74-2

5  at 3. Defendant Finley later authorized an ice pack for Plaintiff. Dkt. 74-6. Non-party corrections

6  deputy Duffy brought an ice pack to Plaintiff's cell. *Id*.

7      The Pierce County Sheriff's Department completed an investigation into the use of force.

8  *See* Dkts. 75, 75-1. Non-party Thomas Catey, a detective sergeant with the Pierce County

9  Sherriff's Department, was tasked with investigating the allegations. Dkt. 75, Catey Dec. During

10  the investigation, Catey interviewed Plaintiff. *Id*.; *see also* Dkt. 75-1 at 17-18. Catey summarized

11  Plaintiff's interview, which Plaintiff does not dispute (Dkt. 80), as follows:

12      Plaintiff was accused of having a shank in his cell. Dkt. 17-1 at 17-18. Plaintiff was upset

13  by this and began to be verbally disrespectful to Defendants Ramos and Finley. *Id*. Plaintiff

14  stated that he was told if the shank was not removed, force would be used. *Id*. at 18. Plaintiff was

15  upset and initially refused to leave his cell. *Id*. Plaintiff "was aware the only use of force options

16  available to corrections officers [were] pepper spray or a Taser." *Id*. Plaintiff stated that he

17  anticipated pepper spray being used because of his behavior and his refusal to leave his cell. *Id*.

18  Plaintiff reported that he placed wet towels around his exposed arms, neck, and face to protect

19  himself against pepper spray. *Id*. Plaintiff admitted he was yelling and cursing at the corrections

20  staff. *Id*.

21      Plaintiff reported that he was removed to the shower area and left alone there,

22  handcuffed, for about ten minutes. Dkt. 75-1 at 18. Plaintiff stated that he continued to be

23  verbally abusive to corrections staff. *Id*. Defendant Finley then advised Plaintiff that he was

24

1    going to be secured in a restraint chair and strip searched because the shank was not found in his

2    cell. *Id*. Defendant Finley, while holding a taser, told Plaintiff that, if he resisted being placed in

3    the restraint chair, he would be tased. *Id*.

4         Plaintiff reported to Catey that he walked to the restraint chair without resistance. Dkt.

5    75-1 at 18. He then sat in the chair with his hands still cuffed behind him. *Id*. Plaintiff stated that

6    Defendant Allen secured his right leg in the restraint chair and Delgado secured his left leg. *Id*.

7    Plaintiff reported that the strap securing his left leg was loose and Plaintiff confirmed he was

8    "jumping around in the restraint chair as he yelled and cursed at Sgt Finley and Sgt Allen." *Id*.

9    Plaintiff asserted that his feet never left the restraint chair. *Id*. He stated Delgado was bent over

10   on his knees near Plaintiff's left leg attempting to secure a leg shackle. *Id*. Plaintiff estimated that

11   Delgado was six inches from Plaintiff's knee and twelve inches from Plaintiff's foot. *Id*. Plaintiff

12   began to jump around again and Defendant Allen "struck him one time on the left side of his face

13   in the area of his mid cheek and jaw line." *Id*. Plaintiff believed Defendant Allen struck him with

14   a closed fist and told Plaintiff not to kick at the deputies. *Id*.

15        After being struck, Plaintiff began to move his tongue around in his mouth because he

16   thought he was bleeding. Dkt. 75-1 at 18. Plaintiff stated Defendant Allen balled his fist up and

17   said "do it I [expletive] dare you to." *Id*. Plaintiff reported that he believed Defendant Allen

18   thought Plaintiff was intending to spit at the deputies. *Id*. A spit sock was then placed over

19   Plaintiff's head. *Id*. Plaintiff stated the inside of his mouth as not bleeding and, after he was

20   struck, he calmed down. *Id*.

21        Plaintiff stated that Defendant Allen refused to remove the spit sock when a nurse came

22   to examine Plaintiff. Dkt. 75-1 at 19; *see also* Dkt. 80 at 4. Plaintiff reported that he asked for an

23   ice pack for his face and was told that an ice pack would not be allowed in his cell. Dkt. 75-1 at

24

REPORT AND RECOMMENDATION - 6

19. Later, Defendant Finley authorized an ice pack for Plaintiff and it was brought to his cell. *Id*. Reports show Plaintiff had swelling in his cheek area. *Id*. at 20-21. Plaintiff states Nurse Raider thought Plaintiff's jaw was fractured and recommended an x-ray. *See* Dkt. 80 at 12. Plaintiff, however, has provided no evidence beyond these hearsay statements to support this assertion.

The deputies did not find a shank when Plaintiff was strip searched. Dkt. 75-1 at 19.

## IV.   Discussion

Defendants contend they are entitled to summary judgment because no genuine issue of material fact exists regarding Plaintiff's claims of (1) excessive force; (2) deliberate indifference to a serious medical need; (3) assault and battery; and (4) negligence. Dkt. 73.

### A.  *Excessive Force*

First, Plaintiff alleges Defendant Allen used excessive force against him in violation of his Fourteenth Amendment rights. Dkt. 30. The Fourteenth Amendment Due Process Clause protects pretrial detainees from excessive force. *Kingsley v. Hendrickson,* 135 S.Ct. 2466, 2470 (2015). To prevail on such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or motivation. *Id.* (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must weigh the circumstances from the viewpoint of a reasonable officer at the scene and "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation and citation omitted). In assessing reasonableness, the Court may consider "the relationship between the need for the use of force

1   and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to

2   temper or to limit the amount of force; the severity of the security problem at issue; the threat

3   reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

4         Here, the evidence, viewed in the light most favorable to Plaintiff, shows corrections

5   deputies and officers believed Plaintiff had a shank (a weapon) in his cell. Plaintiff was cursing

6   at the jail staff and threatening to harm himself and others when he was no longer restrained. The

7   deputies could not find the shank in Plaintiff's cell and determined they needed to conduct a strip

8   search to see if the weapon was on Plaintiff's person. Plaintiff continued to threaten physical

9   violence and he took steps to wrap clothing around his neck and arms to ensure any use of force

10  (pepper spray) would not impact him as severely. Plaintiff was moved to the restraint chair. Once

11  in the restraint chair, Plaintiff continued to yell and threaten the officers. The evidence shows he

12  was jumping around in the chair when the deputies were attempting to secure the straps. There is

13  no dispute that Plaintiff's left leg was near Delgado's head and that his left leg was not secured

14  tightly. Defendant Allen states he thought Plaintiff was going to kick Delgado in the head. He

15  then used force against Plaintiff by striking him in the face.

16        Plaintiff then attempted to determine if he had blood in his mouth. The undisputed

17  evidence shows Defendant Allen thought Plaintiff was preparing to spit on the corrections

18  officers so he instructed that a spit mask be placed on Plaintiff's head.

19        Plaintiff had been threatening physical harm and was actively resisting. His foot was

20  loosely secured, but there is no evidence Defendant Allen knew Plaintiff's left leg was secured in

21  any manner. Rather, Plaintiff was jumping around, his leg did not appear secure, and his foot was

22  between six and twelve inches from Delgado's head. A reasonable officer at the scene could

23  reasonably perceive Plaintiff, who was actively resisting, posed a threat to Delgado. Further, the

24

REPORT AND RECOMMENDATION - 8

1    evidence shows the correctional officers had provided several verbal warnings to Plaintiff that if

2    he did not comply with their directives force would be used. Thus, the evidence shows the

3    deputies, including Defendant Allen, attempted to limit the amount of force that would be used

4    with verbal warnings. It is objectively reasonable that an officer in Defendant Allen's position

5    would perceive Plaintiff was going to attempt to use his foot to harm Delgado.

6         While punching a restrained inmate can rise to the level of a constitutional violation,

7    there is a lack of legal authority finding "one punch to an inmate who is non-compliant or

8    resisting constitutes a violation of the Eighth or Fourteenth Amendment." *DeArmitt v.*

9    *Clackamas Cnty.*, 2019 WL 1497042, at *13 (D. Or. Jan. 18, 2019), *report and recommendation*

10   *adopted*, 2019 WL 1497028 (D. Or. Apr. 4, 2019). A reasonable officer in Defendant Allen's

11   position could have perceived Delgado was in physical danger. Therefore, the evidence

12   presented shows there is no genuine issue a material fact regarding whether Defendant Allen

13   violated Plaintiff's Fourteenth Amendment rights when he struck Plaintiff. *See id.* (finding no

14   Eighth or Fourteenth Amendment rights were violated when the defendant struck the plaintiff

15   with a closed fist and finding the defendant would be entitled to qualified immunity even if there

16   was a constitutional violation because a reasonable officer could find officer engaged with the

17   inmate was in physical danger).

18        Furthermore, there is no dispute that it appeared to Defendant Allen that Plaintiff was

19   preparing to spit on the officers. The evidence therefore shows that it was not unreasonable for

20   Defendant Allen to employ the use of the spit mask. *See Fuller v. Phoenix Fire Dep't*, 2015 WL

21   13216795, at *3 (D. Ariz. Sept. 24, 2015), *aff'd sub nom. Fuller v. Meghean*, 675 F. App'x 786

22   (9th Cir. 2017) (finding it was not unreasonable under the Fourteenth Amendment to apply a spit

23   mask to prevent the transfer of bodily fluids when a plaintiff had just assaulted an officer and

24

was still being loud and disruptive after the altercation); *Bailey v. Multnomah County Sheriff*, 2023 WL 10410421 at * 3-5 (finding officers' use of force was reasonable, which included placing a spit sock over the pretrial detainee's face, when the pretrial detainee was resisting and the officers were attempting to prevent him from spitting blood).

Considering the evidence as a whole, Plaintiff has not shown a genuine issue of material fact exists regarding whether the force used by Defendant Allen was objectively unreasonable. Accordingly, the Court finds Defendants' Motion for Summary Judgment should be granted as to the excessive force claim.

B.  *Deliberate Indifference to Serious Medical Need*

Next, Plaintiff alleges Defendants Allen, Finley, Sidibe, Gaspar, Ramos, Tucker, and Bullinger were deliberately indifferent to Plaintiff's serious medical needs. Dkt. 30. A pretrial detainee's right to adequate medical care arises under the due process clause of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018). The elements of such a claim are: (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) "those conditions put the plaintiff at substantial risk of suffering serious harm"; (3) "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125.

With respect to the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (omitting internal punctuation and quotation marks). "'[M]ere lack of due care'" is not

1    enough; "the plaintiff must 'prove more than negligence but less than subjective intent –

2    something akin to reckless disregard.' " *Id.* (quoting *Castro*, 833 F.3d at 1071).

3          Plaintiff alleges all Defendants failed to immediately report the incident to the medical

4    staff despite Plaintiff voicing multiple requests for medical attention. Dkt. 30 at 7.

5          The evidence shows that, once Plaintiff was restrained, Plaintiff was assessed by medical

6    personnel and cleared of injuries. *See e.g.* Dkt. 74-2. While the record does not reflect

7    Defendants reported the incident to medical, the record indicates Defendants were aware medical

8    had been notified. For example, Defendants Finley, Sidibe, Ramos, and Bullinger did not request

9    medical assistance, but were aware that medical personnel were informed of the use of force and

10   assessed Plaintiff after he was secured in the restraint chair. *See* Dkts. 74-2, 74-5 at 3, 74-7 at 3,

11   74-11 at 3, 74-16. Defendant Finley authorized an ice pack for Plaintiff. Dkt. 75-5. At most,

12   there is some evidence that Defendant Allen did not remove the spit sock when Plaintiff was

13   being examined; instead, he only shined a flashlight through the spit sock. *See* Dkt. 75-1 at 19.

14   However, there is no evidence the nurse requested the spit sock be removed and Plaintiff

15   reported that the spit sock was later removed so he could take medication and medical personnel

16   were able to examine Plaintiff's whole face. *Id.*

17         Overall, the evidence, while limited, shows Plaintiff was provided with medical treatment

18   once he was secured in the restraint chair. There is no evidence showing Plaintiff requested

19   medical treatment and Defendants delayed, interfered with, or denied the requested treatment.

20   Defendants were aware Plaintiff was treated by medical personnel after the use of force incident.

21   While the evidence fails to show who reported the use of force incident to medical, there is no

22   indication Plaintiff requested medical assistance and was denied treatment. Therefore, Plaintiff

23   has not shown Defendants Allen, Finley, Sidibe, Gaspar, Ramos, Tucker, and Bullinger were

24

1    deliberately indifferent to a serious medical need. *See Hernandez v. Wood*, 731 F.App'x 643, 646

2    (9th Cir. 2018) (finding prison guards were not deliberately indifferent to a serious medical need

3    after the use of O.C. spray when the prisoner was taken to the prison clinic, decontaminated, and

4    stabilized before being taken to the hospital). Accordingly, the Court finds Defendants' Motion

5    for Summary Judgment should be granted as Plaintiff's claim of deliberate indifference to a

6    serious medical need.

7         C.  *State Law Claims*

8         Plaintiff also raises two state law claims: (1) Defendant Allen is liable under state law

9    claims of assault and battery and (2) Defendant Bullinger is liable for negligence. *See* Dkt. 30. A

10   district court may exercise supplemental jurisdiction over state law claims arising from the same

11   set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

12   U.S. 635, 639–40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)); *Artis v. District of Columbia*, 583

13   U.S. 71 (2018). However, "[w]hen district courts dismiss all claims independently qualifying for

14   the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis*,

15   583 U.S. at 74. *See also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)

16   (suggesting that a district court may, but need not, decide *sua sponte* whether to continue

17   exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) once all federal law claims

18   have been dismissed).

19        As stated above, the Court finds Plaintiff has failed to show a genuine issue of material

20   fact remains related to his federal claims and recommends dismissal of those claims with

21   prejudice. The remaining claims raise issues solely of state law, and the state courts will

22   therefore be more familiar with the law governing Plaintiff's claims. As there are no federal

23

24

1    claims remaining, the Court finds it appropriate to decline the exercise of supplemental

2    jurisdiction over the remaining state law claims.[2]

3    **V.    Conclusion**

4            For the above stated reasons, the Court concludes Plaintiff has not overcome Defendants'

5    summary judgment showing that no genuine issue of material fact remains as to Plaintiff's

6    constitutional claims of excessive force and deliberate indifference to a serious medical need.

7    Therefore, the Court recommends these claims be dismissed with prejudice. As no federal claims

8    remain, the undersigned recommends the Court decline supplement jurisdiction over Plaintiff's

9    state law claims of assault and battery and negligence. Accordingly, the Court recommends

10   Defendants' Motion for Summary Judgment (Dkt. 73) be granted as follows: Plaintiff's

11   constitutional claims of excessive force and deliberate indifference to a serious medical need be

12   dismissed with prejudice and Plaintiff's state law claims be dismissed without prejudice. The

13   Court recommends this case be closed.

14           Objections to this Report and Recommendation, if any, should be filed with the Clerk and

15   served upon all parties to this suit not later than **fourteen (14) days** from the date on which this

16   Report and Recommendation is signed. Failure to file objections within the specified time may

17   affect your right to appeal. Objections should be noted for consideration on the District Judge's

18   motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may

19   be filed by **the day before the noting date**.

20

21   _____

22   [2] The Court notes Plaintiff's assault and battery claims will likely not survive in state court. Where an
     officer uses reasonable force under federal constitutional standards, he is entitled to state law qualified immunity on
23   any assault and battery claims brought under Washington law. *McKinney v. City of Tukwila*, 103 Wash.App. 391,
     409 (2000) (finding officers entitled to state law qualified immunity on assault and battery claims where the use of
     force was reasonable under § 1983 standards); *see also Anderson v. City of Bainbridge Island*, 472 Fed. Appx. 538,
24   540 (9th Cir. 2012) (affirming dismissal of state law assault and battery claims where force was not excessive).

If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 3, 2024**.

Dated this 12th day of November, 2024.

David W. Christel
United States Magistrate Judge